No. 24-2624

---

DAKOTANS FOR HEALTH, RICK WEILAND, and ADAM WEILAND,

Plaintiffs – Appellees

v.

BOB EWING, In official capacity; BRANDON FLANAGAN, In official
Capacity; RANDY DIEBERT, In official capacity; RICHARD SLEEP, In
official capacity; ERIC JENNINGS, In official capacity, and
LAWRENCE COUNTY COMMISSIONERS, In official capacity,

Defendants – Appellants.

---

Appeal from the United States District Court
District of South Dakota, Western Division
(5:23-cv-05042-RAL)

---

## APPELLANTS' BRIEF

---

Richard M. Williams
Gunderson, Palmer, Nelson & Ashmore, LLP
506 Sixth Street
P.O. Box 8045
Rapid City, SD 57709
Telephone: (605) 342-1078
*Attorneys for Defendants – Appellants*

## SUMMARY OF THE CASE

Appellants, Bob Ewing, Brandan Flanagan, Randy Diebert, Eric Jennings, and Lawrence County Commissioners, in their official capacities, ("Lawrence County") appeal a determination of prevailing party status and award of attorney's fees. Appellees, Dakotans for Health, Rick Weiland, and Adam Weiland, ("Dakotans for Health") brought suit alleging Lawrence County's policy that limited petition circulators to a geographical area at the courthouse unconstitutionally restricted core political speech in violation of the 1st Amendment. An *ex parte* temporary restraining order was issued prohibiting Lawrence County from enforcing the geographic limits of the policy. The parties consented to extending the temporary restraining order for an additional 14 days and a preliminary injunction was never issued. Lawrence County adopted a new policy thereby mooting the case and Dakotans for Health voluntarily dismissed the Complaint for lack of jurisdiction. Dakotans for Health were determined to be prevailing parties and awarded attorney fees. Lawrence County does not request oral argument.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................. i

TABLE OF CONTENTS .................................................................. ii

TABLE OF AUTHORITIES ............................................................ iii

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF THE ISSUE ......................................................... 2

STATEMENT OF THE CASE ........................................................... 3

SUMMARY OF THE ARGUMENT .................................................. 5

ARGUMENT ................................................................................... 6

    I.    DAKOTANS FOR HEALTH ARE NOT PREVAILING
        PARTIES BY VIRTUE OF A TEMPORARY
        RESTRAINING ORDER AND VOLUNTARY CHANGE
        OF CONDUCT ........................................................................ 6

        A. Standard of Review .................................................. 8

        B. A Temporary Restraining Order Does Not Confer
           Prevailing Party Status ............................................. 8

        C. No Preliminary Injunction was Issued ................... 13

        D. A Temporary Restraining Order is Not a
           Judgment on the Merits ........................................... 16

        E. Voluntary Cessation of Conduct Does Not Confer
           Prevailing Party Status ........................................... 18

CONCLUSION ............................................................................. 19

CERTIFICATE OF COMPLIANCE.................................................21

CERTIFICATE OF SERVICE ....................................................22

## TABLE OF AUTHORITIES

## CASES

*Advantage Media, L.L.C. v. City of Hopkins, Minnesota*,
    511 F.3d 833 (8th Cir. 2008)....................................................7, 8

*Benson Hotel Corp. v. Woods*, 168 F.2d 694 (8th Cir. 1948)...........9

*Buckhannon Board and Care Home, Inc. v. West Virginia*
    *Department of Health Human Resources*,
    532 U.S. 598 (2001)............................................. 2, 6, 7, 8, 16, 19

*Dataphase Systems, Inc. v. C L Systems, Inc.*,
    640 F.2d 109 (8th Cir. 1981)......................................................11

*Doe v. Nixon*, 716 F.3d 1041 (8th Cir. 2013) .......................2, 18, 19

*Farrar v. Hobby*, 506 U.S. 103 (1992)...............................................6

*In re Rutledge*, 956 F.3d 1018 (8th Cir. 2020)...............................17

*Institute for Free Speech v. Jackley*,
    340 F.Supp.3d 853 (D.S.D. 2018) ..........................................9, 10

*Kelley v. First Westroads Bank*, 840 F.2d 554 (8th Cir. 1988).......9

*Mastrio v. Sebelius*, 768 F.3d 116 (2nd Cir. 2014) ............ 10, 11, 12

*Missouri-Kansas-Texas Railroad Co. v. Randolph*,
    182 F.2d 996 (8th Cir. 1950)......................................................9

*Northern Cheyenne Tribe v. Jackson*,
    433 F.3d 1083 (8th Cir. 2006)................................2, 8, 14, 15, 16

*Rogers Group, Inc. v. City of Fayetteville, Arkansas,*
  683 F.3d 903 (8th Cir. 2012).......................................... 2, 16, 17, 19

*Salitros v. Chrysler Corp.*, 306 F.3d 562, 576 (8th Cir. 2002)......... 8

*Select Milk Producers, Inc. v. Johanns,*
  400 F.3d 939 (D.C.Cir. 2005)......................................... 16, 17, 19

*Sole v. Wyner*, 551 U.S. 74 (2007)....................................... 14

*Texas State Teachers Association. v. Garland Independent*
  *School District*, 489 U.S. 782 (1989)................................... 7

## STATUTES

28 U.S.C. §§ 1291 ...................................................................... 1

28 U.S.C. § 1292(a)(1) ............................................................ 17

28 U.S.C. § 1294(1)................................................................... 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1343(3)................................................................... 1

42 U.S.C. § 1983 ...................................................................... 1

42 U.S.C. § 1988(b)........................................................ 3, 5, 6, 19

Fed. R. Civ. P. 65(b)(2) ...................................................... 3, 9, 11, 13

## CONSTITUTION

U.S. Const. Amend. I........................................................... 1

# SECONDARY SOURCES

Black's Law Dictionary 846 (7th ed. 1999) ................................... 17

Black's Law Dictionary 1410 (6th ed. 1990) ................................. 11

11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (3d. ed. 2023) ............................................. 10

43A C.J.S. *Injunctions* § 27 ............................................................ 10

# JURISDICTIONAL STATEMENT

Dakotans for Health brought suit in the United States District Court, District of South Dakota alleging violation of the First Amendment of the Constitution seeking relief under 42 U.S.C. § 1983. The District Court's jurisdiction was based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and civil rights jurisdiction pursuant to 28 U.S.C. § 1343(3). Dakotans for Health voluntarily dismissed the case for lack of jurisdiction after Lawrence County mooted the case and the District Court reserved a ruling on whether Dakotans for Health were entitled to attorney's fees and costs. The District Court issued an Opinion and Order Granting Motion for Attorney's Fees and a final Judgment on July 10, 2024. Lawrence County filed a timely Notice of Appeal on August 7, 2024. The Eighth Circuit Court of Appeals has jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF THE ISSUE

WHETHER AN EX PARTE TEMPORARY RESTRAINING
ORDER CONFERS PREVAILING PARTY STATUS?

*Buckhannon Board and Care Home, Inc. v. West Virginia*
*Department of Health Human Resources*,
532 U.S. 598 (2001)

*Sole v. Wyner*, 551 U.S. 74 (2007)

*Rogers Group, Inc. v. City of Fayetteville, Arkansas*,
683 F.3d 903 (8th Cir. 2012)

*Northern Cheyenne Tribe v. Jackson*,
433 F.3d 1083, 1086 (8th Cir. 2006)

## STATEMENT OF THE CASE

This is an appeal from an Opinion and Order determining Dakotans for Health to be prevailing parties and awarding attorney fees pursuant to 42 U.S.C. § 1988(b). (App. 131, R. Doc. 41.) Dakotans for Health sued Lawrence County alleging a policy that limited petition circulators to a geographical area at the courthouse unconstitutionally restricted core political speech in violation of the 1st Amendment. The Complaint was filed on June 20, 2023 and sought a temporary restraining order, preliminary injunction, and permanent injunction. (App. 1, R. Doc. 1.) Two days later, on June 22, 2023, the District Court granted an *ex parte* temporary restraining order prohibiting Lawrence County from enforcing the geographical limitation of the policy. (App. 40, R. Doc. 12.) The temporary restraining order was set to expire in 14 days on July 6, 2023. *Id.*

On June 28, 2023, pursuant to Fed. R. Civ. P. 65(b)(2), the parties consented to an order extending the temporary restraining order for an additional 14 days and the District Court issued an order extending the temporary restraining order until 4:48 p.m. on

July 20, 2023. (App. 57, R. Doc. 13) (App. 60, R. Doc. 15.) Dakotans for Health proposed a consent motion for a preliminary injunction to which Lawrence County declined to agree, but advised it was drafting a new policy and would not enforce the geographical limitation of the current policy even after the temporary restraining order expired on July 20, 2023. (App. 64, R. Doc. 16-1.) On July 13, 2023, Dakotans for Health filed a "Notice of Defendants' Promise to Obey the TRO After it Expires" and notified the District Court that they did not request further relief from the court at that time. (App. 62, R. Doc. 16.)

On October 10, 2023, Lawerence County adopted a new policy that eliminated the geographical restrictions for petition circulators. (App. 92, R. Doc. 25-1.) On November 3, 2023, Dakotans for Health filed a voluntary Motion to Dismiss for lack of subject matter jurisdiction because the action was moot but requested the court reserve a ruling on attorney's fees and costs. (App. 90, R. Doc. 25.) The District Court granted the motion for voluntary dismissal and reserved a ruling on attorney's fees and costs. (App. 96, R. Doc. 28.) After briefing and a hearing, the

District Court determined Dakotans for Health were prevailing parties and awarded attorney's fees and costs. (App. 131, R. Doc. 41.) The issue on appeal is whether Dakotans for Health are "prevailing parties" for purposes of 42 U.S.C. § 1988(b).

**SUMMARY OF THE ARGUMENT**

An *ex parte* temporary restraining order does not confer prevailing party status because it is not a judicially sanctioned material alteration of the legal relationship of the parties. Temporary restraining orders are not decisions upon the merits and merely maintain the status quo until a hearing on the merits may be had. The status quo preserved is the "last actual, peaceable uncontested status which preceded the pending controversy" and enjoining a defendant from enforcing an alleged unconstitutional portion of their policy maintains the status quo.

Prevailing party status also requires a judgment in the moving parties' favor and a temporary restraining order is not a judgment because it is not an order that can be appealed. The Supreme Court's rejection of the "catalyst theory" provides that a defendant's voluntary change in conduct lacks the necessary

judicial imprimatur on the change of the legal relationship even though it may have accomplished what the plaintiff sought to achieve by the lawsuit. A temporary restraining order that expired followed by a voluntarily dismissal of the case does not contain the judicial imprimatur of change required to be a prevailing party.

## ARGUMENT

I. **DAKOTANS FOR HEALTH ARE NOT PREVAILING PARTIES BY VIRTUE OF A TEMPORARY RESTRAINING ORDER AND VOLUNTARY CHANGE OF CONDUCT**

Generally, "absent explicit statutory authority" to the contrary, parties must bear their own attorney's fees. *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health Human Resources*, 532 U.S. 598, 602 (2001) (citations omitted). Dakotans for Health rely upon 42 U.S.C. § 1988(b) for their request for attorney's fees which authorizes "reasonable attorney's fees" for "the prevailing party" in civil rights actions. "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).

6

In *Buckhannon*, the Supreme Court held that "enforceable judgments on the merits and court-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." 532 U.S. at 604 (*quoting Texas State Teachers Association. v. Garland Independent School District*, 489 U.S. 782, 792-93 (1989) (additional citation omitted)). *Buckhannon* rejected the "catalyst theory, which posits that a plaintiff is a prevailing party if it achieves the desired result because the lawsuit brought the voluntary change in the defendant's conduct." *Id.* at 601 (cleaned up). The Court reasoned "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." *Id.* at 605; *see also Advantage Media, L.L.C. v. City of Hopkins, Minnesota*, 511 F.3d 833, 837 (8th Cir. 2008) ("[A] party must obtain a judicially sanctioned material alteration of the legal relationship between the parties to the lawsuit to achieve prevailing party status.") (emphasis in original). *Buckhannon's* "analysis applies generally to fee shifting

statutes incorporating the 'prevailing party' language." *Advantage Media*, 511 F.3d at 837 (citations omitted).

## A. Standard of Review

The determination of prevailing party status is subject to *de novo* review. *Advantage Media*, 511 F.3d at 836 (*citing Salitros v. Chrysler Corp.*, 306 F.3d 562, 576 (8th Cir. 2002)).

## B. A Temporary Restraining Order Does Not Confer Prevailing Party Status

The entry of an *ex parte* temporary restraining order does not make Dakotans for Health the prevailing party. While "a preliminary injunction can in some instances carry the judicial imprimatur required by *Buckhannon* to convey prevailing party status[,]" the same cannot be said of a temporary restraining order. *Advantage Media*, 511 F.3d at 837 (*citing Northern Cheyenne Tribe v. Jackson*, 433 F.3d 1083, 1086 (8th Cir. 2006) ("Some preliminary injunctions are sufficiently akin to final relief on the merits to confer prevailing party status.") (emphasis added)).

A temporary restraining order does not create a material alteration in the legal relationship of the parties to permit an

award of attorney's fees because temporary restraining orders merely maintain the status quo. "A temporary injunction is usually issued to preserve the status quo until a hearing on the merits may be had. It does not involve the merits of the action . . ." *Missouri-Kansas-Texas Railroad Co. v. Randolph*, 182 F.2d 996, 999 (8th Cir. 1950) (emphasis added); *accord Kelley v. First Westroads Bank*, 840 F.2d 554, 558 (8th Cir. 1988) ("the well-established function of a temporary restraining order is to maintain the status quo.")

Rule 65(b) provides that a court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" if there is a clear showing of "immediate and irreparable injury, loss, or damage". Fed. R. Civ. P. 65(b).

> [T]he granting of a temporary injunction serves only to hold the matter in statu quo until opportunity is afforded to decide upon the merits. The granting or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for.

*Benson Hotel Corp. v. Woods*, 168 F.2d 694, 698 (8th Cir. 1948).

*See also Institute for Free Speech v. Jackley*, 340 F.Supp.3d 853,

858 (D.S.D. 2018) ("A temporary restraining order under Rule 65(b) is to prevent immediate and irreparable harm and typically to preserve the status quo until the Court can hear from both sides."); 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (3d. ed. 2023 update) (noting a temporary restraining order "is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction and may be issued with or without notice to the adverse party.")

> The status quo that will be preserved by a preliminary injunction is the last, actual, peaceable, noncontested status that preceded the pending controversy, as it presently or formerly existed. This is the last uncontested set of facts preceding the pending controversy. If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists after the action.

43A C.J.S. *Injunctions* § 27 (footnotes omitted). *Accord Mastrio v. Sebelius*, 768 F.3d 116, 120 (2nd Cir. 2014) (the term "preserve the status quo" in the preliminary injunction or TRO context "'is the last actual, peaceable uncontested status which preceded the

pending controversy.'" (*quoting* Black's Law Dictionary 1410 (6th ed. 1990))).

In its Opinion and Temporary Restraining Order, the District Court noted that "on an ex parte motion for temporary restraining order under Rule 65(b), a court should be cautious not to make any factual conclusions" and that "[t]he focus in considering a temporary restraining order is whether the moving party 'clearly show[s] that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition.'" (App. 41, 46, R. Doc. 12 at pp. 2, 7) (*quoting* Fed. R. Civ. P. 65(b)). The District Court recognized that "[a]lthough the *Dataphase* factors do not apply under the language of the rule to the decision to grant a temporary restraining order" it considered the *Dataphase* factors and concluded Dakotans for Health were *likely* to succeed on the merits. (App. 46, 53, R. Doc. 12 at pp. 7, 14) (*citing Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). Despite the clear rationale for temporary restraining orders under Rule 65(b), in determining Dakotans for Health were

prevailing parties, the District Court concluded the *ex parte* temporary restraining order *did* address the merits, did not merely maintain the status quo, and "offered significant insight into who would ultimately prevail". (App. 49, R. Doc. 41 at p 10.)

The District Court's reasoning is erroneous and conflicts with the well-settled purpose and rationale of Rule 65(b)—that temporary restraining orders are not decisions on the merits and intended to merely preserve the status quo until the parties can be heard. The status quo is "last actual, peaceable uncontested status which preceded the pending controversy" and "[t]o preserve the status quo a court may require the parties to act or to refrain from acting". *Mastrio*, 768 F.3d at 121. The Temporary Restraining Order was not a determination on the merits, only that there was a *likelihood* of success on the merits. Lawrence County did not have the opportunity to respond to Dakotans for Health's allegations prior to the District Court's entry of the Temporary Restraining Order. Because a temporary restraining order merely maintains the status quo and is not a decision on the merits, it

does not materially alter the legal relationship between the Parties. Dakotans for Health are not the prevailing party.

### C. No Preliminary Injunction was Issued

A preliminary injunction was never issued in this case. The parties consented to extend the Temporary Restraining Order for an additional 14 days pursuant to Fed. R. Civ. P. 65(b)(2) and the District Court entered an Order Extending Temporary Restraining Order until July 20, 2023. (App. 57, R. Doc. 13) (App. 60, R. Doc. 15.) Before the temporary restraining order expired, Dakotans for Health requested Lawrence County agree to a consent preliminary injunction. (App. 64, R. Doc. 16.1.) Lawrence County declined to enter into a consent preliminary injunction and instead advised it was revising the policy and would not enforce the current policy in the meantime even after the expiration of the temporary restraining order. *Id.*

Dakotans for Health notified the court they were not requesting further relief at that time because Lawrence County "promised to obey the TRO even <u>after it expires on July 20</u>". (App. 62, R. Doc. 16) (emphasis added). Despite Lawrence County

agreeing not to enforce the current policy, the temporary restraining order still expired on July 20, 2023 by virtue of the Order Extending Temporary Restraining Order which extended the TRO until 4:48 p.m. on July 20, 2023. (App. 60, R. Doc. 15.) Thereafter, no preliminary injunction hearing was held, no preliminary injunction was issued, and Lawrence County adopted a new policy that mooted the case. Dakotans for Health voluntarily dismissed the case after the expiration of the temporary restraining order. This does not confer prevailing party status. *See Sole v. Wyner*, 551 U.S. 74, 83 (2007) ("Prevailing party status, we hold, does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case.")

Even though Lawrence County voluntarily refrained from enforcing the policy after the expiration of the temporary restraining order, the fact remains that only temporary relief was obtained from the court. "[A] preliminary injunction that grants only temporary relief pendente lite is not, without more, a judicially sanctioned <u>material</u> alteration of the parties' legal

14

relationship within the meaning of *Buckhannon*." *Northern Cheyenne*, 433 F.3d at 1086 (emphasis in original). "[V]irtually every circuit court to consider the question has concluded that a <u>preliminary injunction granting temporary relief that merely maintains the status quo</u> does not confer prevailing party status. . . . We agree." *Id.* at 1086 (citations omitted) (emphasis added). The District Court incorrectly concluded the temporary restraining order did not simply preserve the status quo because it barred Lawrence County from enforcing a portion of its policy. However, the status quo is the "last actual, peaceable uncontested status which preceded the pending controversy". Enjoining Lawrence County from enforcing the geographical restraint of its policy *is* preserving the status quo, not altering it.

In the case *sub judice*, only a temporary restraining order was obtained the very nature of which is "temporary relief that merely maintains the status quo". Dakotans for Health did not receive a final order and did not receive a decision on the merits. Dakotans for Health cannot be a prevailing party by virtue of such an order. When a court issues a preliminary order determining a

party is *likely* to prevail on the merits, such relief is only interim and preserves the status quo until the merits of the claim can be resolved. *Northern Cheyenne*, 433 F.3d at 1086.

### D. A Temporary Restraining Order is Not a Judgment on the Merits

*Buckhannon* identified "three core principles" to determine prevailing party status in federal fee-shifting statutes. *Rogers Group, Inc. v. City of Fayetteville, Arkansas*, 683 F.3d 903, 910 (8th Cir. 2012) (*citing Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 946 (D.C.Cir. 2005) (analyzing *Buckhannon*, 532 U.S. at 603-606)).

> First, in order to be a prevailing party, a claimant must show that there has been a court-ordered change in the legal relationship between the plaintiff and the defendant. (*Citing Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835.)

> Second, a prevailing party is a party in whose favor a judgment is rendered, regardless of the amount of damages awarded. (*Citing Buckhannon*, 532 U.S. at 603, 121 S.Ct. 1835.)

> Third, a claimant is not a prevailing party merely by virtue of having acquired a judicial pronouncement unaccompanied by judicial relief. (*Citing Buckhannon*, 532 U.S. at 606, 121 S.Ct. 1835.)

*Rogers Group*, 683 F.3d at 910 (*quoting Select Milk Producers*, 400 F.3d at 947). "The term 'judgment' includes 'a decree and any order from which an appeal lies.'" *Rogers Group*, 683 F.3d at 911 (*quoting Select Milk Producers*, 400 F.3d at 947 (*quoting* Black's Law Dictionary 846 (7th ed. 1999))).

A temporary restraining order is not a judgment on the merits because it is not an appealable order unless, in rare cases, the litigant would suffer "serious, perhaps irreparable consequence" from its issuance. *In re Rutledge*, 956 F.3d 1018, 1026 (8th Cir. 2020) (citations omitted). Unlike a preliminary injunction, the Temporary Restraining Order issued in this matter was not appealable. *Rogers Group*, 683 F.3d at 911 ("Under 28 U.S.C. § 1292(a)(1), preliminary injunctions are appealable orders.") But temporary restraining orders, without more, are not appealable orders.

Lawrence County did not have an opportunity to contest the merits of the Temporary Restraining Order, nor was the Temporary Restraining Order appealable. Rather, Lawrence County voluntarily chose to change their policy. As a matter of

public and judicial policy, Lawrence County should not be placed in the position of choosing continued—and unnecessary—ligation only for the purposes of defending against the imposition of attorneys' fees. The Temporary Restraining Order did not create a material alteration in the legal relationship of the parties and it was not a judgment on the merits. Dakotans for Health are not prevailing parties such that they are entitled to an award of attorney's fees.

### E. Voluntary Cessation of Conduct Does Not Confer Prevailing Party Status

Lawrence County's voluntary decision to refrain from enforcing the old policy after expiration of the temporary restraining order and adopting a new policy is not the necessary judicial imprimatur required for prevailing party status. "[T]he Supreme Court has rejected the catalyst theory in determinations of prevailing party status, and has made clear that '[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change.'" *Doe v. Nixon*, 716

F.3d 1041, 1050 (8th Cir. 2013) (*quoting Buckhannon*, 532 U.S. at

605).

> If the [City] had acted to moot this case through
> voluntary cessation before there was a judicially
> sanctioned change in the legal relationship of the
> parties, [Rogers Group] would not have been [a]
> "prevailing part[y]."

*Rogers Group*, 683 F.3d at 911 (*quoting Select Milk Producers*,

400 F.3d at 949 (brackets from *Rogers Group*) (internal quotation

marks omitted)). Lawrence County voluntarily agreed not to

enforce the policy after the temporary restraining order expired

and then mooted the case by adopting a new policy eliminating the

geographic restriction at issue in this case. This is not a judicially

sanctioned material alteration of the legal relationship of the

parties and Dakotans for Health are not prevailing parties as

required by 42 U.S.C. § 1988(b) for an award of attorney fees.

## CONCLUSION

This Court should reverse the District Court's determination

that Dakotans for Health are prevailing parties entitled to

attorney fees. An *ex parte* temporary restraining order is not a

judicially sanctioned material alteration of the legal relationship

of the parties. Voluntary change in conduct and voluntary

dismissal after the expiration of an *ex parte* temporary restraining

order without a preliminary injunction does not confer prevailing

party status.

Dated: September 30, 2024.

GUNDERSON, PALMER, NELSON
& ASHMORE, LLP

By: /s/ *Richard M. Williams*
Richard M. Williams
*Attorneys for Appellants*
506 Sixth Street
P.O. Box 8045
Rapid City, SD 57709
Telephone: (605) 342-1078
Fax: (605) 342-0480
E-mail: rwilliams@gpna.com

# CERTIFICATE OF COMPLIANCE

I certify Appellants' Brief complies with the type-volume limitation provided for in Fed. R. App. P. 32(a)(7)(C) and 32(f). Appellants' Brief contains 3,528 words in Century 14-point font. I have relied upon the word count of my Microsoft Word 365 system that was used to prepare Appellants' Brief. The original Appellants' Brief and all copies are in compliance with this rule.

I certify that the electronic version of Appellants' Brief has been scanned for viruses and are virus-free. The electronic version of the brief has been printed to PDF format directly from the original word processing file.

By: */s/ Richard M. Williams*
Richard M. Williams

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: _/s/ Richard M. Williams_
Richard M. Williams